IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ERIC LUCERO and WHITNIE POTTS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| FEDERATED MUTUAL INSURANCE COMPANY, | § § § | CIVIL ACTION NO. 2:20-CV-207-Z-BQ |
| Intervenor Plaintiff, | § § § | |
| v. | § § | |
| CATERPILLAR INC., | § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**[1]

Before the Court is Defendant Caterpillar Inc.'s (Caterpillar) Opposed Motion to Strike

Plaintiffs' Late Designation of Expert Witnesses in which it asks the Court to strike Plaintiffs Eric

Lucero and Whitnie Potts's (collectively, Plaintiffs) designation of their liability and economic

damages experts. ECF No. 71; *see* ECF Nos. 35, 58, 91. The parties have fully briefed this matter

and the motion is now ripe. ECF Nos. 77, 81, 95. For the reasons stated below, the undersigned

recommends that the United States District Judge **GRANT in part** Caterpillar's motion.

---

[1] The Honorable Matthew J. Kacsmaryk, United States District Judge, referred this case to the undersigned for pretrial management, including resolution of "non-dispositive motions" and "other pretrial matters." ECF Nos. 6, 47. Motions to exclude expert witnesses may be treated as non-dispositive, thereby authorizing a magistrate judge to enter an order under 28 U.S.C. § 636(b) resolving the motion. *See, e.g.*, *Koenig v. Beekmans*, No. 5-15-CV-00822-RCL-RBF, 2018 WL 358307, at *1 (W.D. Tex. Jan. 9, 2018); *Target Strike, Inc. v. Marston & Marston, Inc.*, No. SA–10–CV–0188 OLG (NN), 2011 WL 676185, at *1 (W.D. Tex. Feb. 16, 2011). Other magistrate judges, however, issue "reports and recommendations . . . indicating that this may be the proper procedure for consideration by the District Court." *Coppedge v. K.B.I., Inc.*, No. 9:05-CV-162, 2007 WL 397495, at *1 n.1 (E.D. Tex. Feb. 1, 2007). Out of an abundance of caution, the undersigned therefore enters the following findings, conclusions, and recommendation.

## I.   <u>**Background**</u>

### A.  **Factual and Procedural History**

Plaintiffs originally filed suit in state court on August 10, 2020, against multiple parties, including Caterpillar.[2]  ECF No. 1-3, at 1.  On September 9, 2020, Caterpillar removed the case to this Court.  ECF No. 1.  Plaintiffs contend that on August 10, 2018, Eric Lucero, who was then an employee of NebraskaLand Tire Inc. d/b/a Panhandle Tire & Service, went on a service call to replace a tire on a Caterpillar wheel loader.  Pls.' First Am. Compl. 2–3 ¶¶ 4.01–.02, 4.05, ECF No. 61.  As Mr. Lucero worked on the tire, it exploded and a "split tire ring blew . . . off of the tire causing the ring to strike Mr. Lucero in the head and knock him to the ground causing severe and permanent personal injuries to Mr. Lucero."  *Id.* at 3–4 ¶ 4.06.  Plaintiffs bring claims for strict products liability and negligence.  *Id.* at 4–5.

On August 16, 2021, and within the timeframe set by the Court's original scheduling order, Plaintiffs designated, in relevant part, Mike Huerta and Jordan Mills as retained expert witnesses. ECF No. 35; *see* ECF No. 20, at 2 (requiring Plaintiffs to designate expert witnesses "*and . . . otherwise comply with Federal Rule of Civil Procedure 26(a)(2) expert disclosure requirements on or before*" Aug. 16, 2021 (emphasis added)).  Plaintiffs' designation included a brief statement as to each expert:

- Huerta: "This witness is in the field of engineering, who, if called, may testify as to the chain of custody, test methodology, the test results, and levels of impairment. The facts known, opinions held, and summary of the grounds for the opinions are contained in, but not limited to, the results of the toxicology tests and other documents produced in discovery from his office."
- Mills: "Mr. Mills will provide testimony on Mr. Lucero's past and future lost earnings based upon employment records. Mr. Mills' report will be furnished as required by the Scheduling Order."

---

[2] All other defendants have since been dismissed.  *See* ECF Nos. 15, 89.

ECF No. 35, at 1, 5. Beyond these explanations, the designation included no other information about the experts, nor did Plaintiffs provide any expert reports. *See id.* Several months after Plaintiffs' expert designation deadline expired, Plaintiffs supplemented their disclosures with a document titled "Rule 26(a)(2) Disclosures," which was accompanied by Huerta's and Mills' disputed expert reports. ECF No. 58 (dated Mar. 4, 2022).

Plaintiffs next moved for entry of an amended scheduling order. ECF No. 68. Plaintiffs' proposed amended scheduling order included new dates for all deadlines, both expired and un-expired, including those for expert disclosures and discovery. *Compare* ECF No. 68-5 (proposed second amended scheduling order), *with* ECF No. 51 (Amended Rule 16 Scheduling Order). In support, Plaintiffs explained that they purchased the tire and wheel involved in the incident, which they delivered to Huerta in November 2021. ECF No. 68, at 4–5. Huerta's inspection apparently raised some question, however, as to whether the wheel assembly was the one involved in Mr. Lucero's accident. *Id.* at 5–8. Plaintiffs argued that their proposed scheduling order would provide additional time to resolve this dispute and complete discovery. *Id.* at 8. Caterpillar opposed the request and filed its Motion to Strike in a single filing. ECF No. 71. The parties then stipulated that Plaintiff had indeed obtained the correct wheel assembly. ECF Nos. 73, 74. Reasoning that the primary basis for Plaintiffs' motion had been resolved and noting that there was adequate time to complete discovery under the operative scheduling order (i.e., approximately ten weeks), the Court denied Plaintiffs' motion. ECF No. 75. The parties subsequently completed briefing on Caterpillar's Motion to Strike. ECF Nos. 77, 81.

Soon thereafter and for reasons not relevant to the instant dispute, the Court stayed the case. ECF Nos. 82, 83. Following expiration of the stay, the undersigned held a status conference with the parties on January 12, 2023. ECF Nos. 90, 92. Although the primary purpose of the

hearing was to consider the scheduling deadlines that remained at the time the matter was stayed, the Court also discussed the pending Motion to Strike.  Tr. 1:55–3:12, 4:45–5:47, 11:00–12:14.[3] The parties addressed Plaintiffs' prior representation that Plaintiffs would supplement Huerta's expert report within 45 days of filing their response brief—i.e., July 1, 2022.  *See* ECF No. 77. Plaintiffs did not do so, explaining that they "could not get it done in the 45 days" and, although it had since been prepared, Plaintiffs had not yet provided it given that the case was stayed.  Tr. 11:00–12:14.  Shortly after the hearing, Plaintiffs filed Huerta's amended report.  ECF No. 91. Thereafter, Caterpillar filed a supplemental brief in support of its Motion to Strike.  ECF No. 95.

### B. The Parties' Arguments

Through its motion, Caterpillar asks the Court to strike Huerta and Mills as expert witnesses because Plaintiffs' initial designation was incomplete, and their supplemental disclosures were untimely and again inadequate.[4]  Def.'s Mot. to Strike Pls.' Late Designation of Expert Witnesses 7–8, 16, ECF No. 71 [hereinafter Mot.].  Caterpillar first argues that Plaintiffs' initial expert disclosures were incomplete because Plaintiffs failed to provide the experts' respective reports and other requisite information under Federal Rule of Civil Procedure 26(a)(2)(B).  *Id.* at 4–5.  Second, Caterpillar contends that Plaintiffs' supplemental designation was late and still did not satisfy Rule 26.[5]  *Id.* at 15.  Namely, Caterpillar asserts that, contrary to

---

[3] Citations to the transcript reference the Court's audio recording of the status conference.  *See* ECF No. 92.

[4] Caterpillar also argues that Huerta's opinion lacks foundation and should be excluded for this additional reason. Mot. 14–15.  Plaintiffs have since filed Huerta's amended expert report (ECF No. 91), and Caterpillar did not raise similar substantive arguments in its supplemental brief.  *See* ECF No. 95.  Accordingly, Caterpillar's substantive objections to Huerta's initial report are moot in regard to the pending motion and the Court does not address them. *See Williams v. B&B Elec. & Util. Contractors, Inc.*, No. 2:19-CV-00325, 2022 WL 6640178, at *1 (S.D. Tex. Feb. 8, 2022) (denying as moot motion to exclude where plaintiffs filed supplemental expert disclosures).

[5] The precise basis for Caterpillar's motion under Rule 26 is less than clear.  In its background section, Caterpillar asserts that Plaintiffs' supplemental disclosures do "not comply with Federal Rule of Civil Procedure 26(a)(2)(B)(i), (iv), (v), and (vi)."  Mot. 6–7.  Conversely, in its conclusion Caterpillar contends that Plaintiffs' expert designations are insufficient under Rule "26(a)(2)(B), specifically subsections (i), (ii), (v), and (vi)."  *Id.* at 16.  That is, Caterpillar cites different subsections in its introduction and its conclusion.  Further, its argument section only specifically refers to subsections (i), (v), and (vi).  *Id.* at 10, 15.  To make matters more confusing, Caterpillar's reply brief contends that

subsections (v) and (vi), Huerta's and Mills' expert reports are deficient because neither provided a list of all other cases in which they have testified as an expert and Plaintiffs failed to disclose their respective compensation. *Id.* at 6–7, 15. Caterpillar further argues that Huerta's report is only preliminary and therefore fails to comply with subsection (i). *Id.* at 6–7, 10–12, 16.

Plaintiffs understandably oppose Caterpillar's motion, first arguing that "Caterpillar incorrectly seeks discovery sanctions through a motion to strike" because such motions are "meant for pleadings, not discovery issues." Pls.' Resp. to Mot. to Strike 3, ECF No. 77 (emphasis omitted) [hereinafter Resp.]. Plaintiffs' primary contention, however, is that their failure to timely supply the expert reports was justified and harmless. *Id.* at 1–2. Addressing Caterpillar's arguments about the supplemental disclosures, Plaintiffs first contend that Huerta's initial report was preliminary because he "was under the impression he was inspecting" the incorrect wheel, and he therefore could not provide "a complete statement of all opinions the witness will express and the basis and reasons for them" or the "facts or data considered . . . in forming them." *Id.* at 4–5. That is, Plaintiffs aver that any lacking substantive information is missing for good cause due to the now-resolved dispute about the wheel assembly, and that they intended to provide the complete report within 45 days, i.e., July 1, 2022.[6] *Id.* Next, Plaintiffs explain that Huerta could not provide a list of all other cases in which he has testified as an expert because he does not

---

Huerta's expert report does not satisfy subsections (i), (iii), (iv), (v), and (vi) and Mills' report fails to comply with subsections (iii), (iv), (v), and (vi). Def.'s Reply Br. in Supp. of Mot. to Strike 6, ECF No. 81 [hereinafter Reply].

The Court does not consider any arguments concerning subsection (iii) because these arguments were not raised in Caterpillar's initial motion. *See Martin v. Loc. 556, Transp. Workers Union of Am., AFL-CIO*, No. 3:14-CV-0500-D, 2016 WL 2983726, at *1 (N.D. Tex. May 23, 2016) ("[T]his court has long declined to consider arguments raised for the first time in a reply brief."). Moreover, due to the inconsistency in Caterpillar's briefing and the lack of argument therein as to subsections (ii) and (iv), the Court finds that any arguments under these subsections are undeveloped and therefore waived. *See Paez v. Wal-Mart Stores Tex., LLC.*, No. EP-20-CV-00321-DCG, 2022 WL 3216343, at *1 (W.D. Tex. Aug. 9, 2022) ("When a party abandons its obligation to develop its argument, it waives that argument."); *see also Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 327 F. App'x 472, 483 (5th Cir. 2009) ("It is not enough to merely mention or allude to a legal theory."). In sum, the Court construes Caterpillar's motion as only alleging deficiencies under Rule 26(a)(2)(B)(i), (v), and (vi).

[6] As noted, Plaintiffs did not supply Huerta's amended report until January 12, 2023. ECF No. 91.

maintain such a record. *Id.* at 5. Finally, Plaintiffs explain that "Huerta has been paid $9,000 for his time as an expert in this matter." *Id.* Concerning prejudice, Plaintiffs argue that their untimely and incomplete disclosure was harmless because Caterpillar was put on notice of the subject matter of both experts' opinions, even if Caterpillar did not timely receive the complete substance of those opinions. *Id.* at 5–6. On the other hand, Plaintiffs contend that they would be greatly prejudiced if the Court excluded the experts due to "the importance of Huerta's and Mills' testimony and opinion[s] to their case." *Id.*

In reply, Caterpillar avers that "[i]t is well-settled that a motion to strike is a proper procedure for challenging a late-designated expert." Reply 2 (citations omitted). Turning to the merits, Caterpillar maintains that both Huerta and Mills should be excluded as expert witnesses because Plaintiffs failed to demonstrate good cause for their failure to comply with the Court's scheduling order and Rule 26. *Id.* at 1. First, Caterpillar observes that Plaintiffs have admitted that Huerta was not provided the wheel assembly until almost three months *after* the expert designation deadline, and that "Plaintiffs do not explain why they timely filed their" expert designation but "then waited another 80 days to provide the [w]heel [a]ssembly for Dr. Huerta's inspection." *Id.* at 3. Further, Caterpillar claims that it would be prejudiced if the Court allowed Huerta's testimony because Caterpillar's liability expert would need "further postponement of deadlines" "to prepare a responsive report," thereby requiring Caterpillar to expend additional time, money, and resources. *Id.* at 4. And as to Mills, Caterpillar contends that "Plaintiffs make no effort to explain why Mr. Mills' report was produced more than six months after the" expert designation deadline. *Id.* at 5. Finally, Caterpillar reiterates that both Huerta's and Mills' untimely reports lack information required under Rule 26. *Id.* at 5–6. Specifically, Huerta's report is incomplete as to his opinions and their bases, and both Huerta's and Mills' reports do not include

lists of all other cases in which they have testified as experts and fail to disclose their compensation. *Id.* at 6. Caterpillar therefore reasserts that both experts' "reports should be stricken, and they should not be allowed to testify." *Id.* at 6.

In its supplemental brief, Caterpillar primarily takes issue with Plaintiffs' January 12, 2023 filing of Huerta's amended expert report. Def.'s Suppl. Br. in Supp. of Mot. to Strike 1–5, ECF No. 95 [hereinafter Suppl.]. Caterpillar first notes that Plaintiffs provided this amended report more than six months after they represented that it would be supplied and approximately seventeen months after the expiration of the expert designation deadline. *Id.* at 1–2. As to the substance of the report, Caterpillar contends that, despite Plaintiffs' arguments that Huerta's initial report was preliminary due to a "large gap in information," the expert's amended report never identifies what information prevented him from reaching his conclusions sooner, nor does he explain how that gap was filled. *Id.* at 3. Caterpillar argues that it has been prejudiced by the late disclosure because there is "less than a month remaining before expiration of an amended discovery deadline," during which it will potentially need to supplement its own expert's report and furnish him for deposition. *Id.* at 4. Further, as to Plaintiffs' damages expert, Mills, Caterpillar asserts that they "have never even attempted to explain why" his report "was not produced until" approximately six months after the expert designation deadline. *Id.* In sum, Caterpillar asks the Court to strike both experts because Plaintiffs have failed to demonstrate good cause for their late disclosures. *Id.* at 4–5.

## II.    Legal Standard

The Federal Rules of Civil Procedure require parties to disclose expert witnesses by the deadlines imposed in the court's scheduling order. FED. R. CIV. P. 26(a)(2)(A), (D). Under Rule 26(a)(2)(B), expert disclosures must contain:

> (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;

     (ii)     the facts or data considered by the witness in forming them;

     (iii)    any exhibits that will be used to summarize or support them;

     (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

     (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

     (vi)    a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). "The specific purpose of the requirement to exchange expert reports is to eliminate unfair surprise to the opposing party and to conserve judicial resources." *Familias Unidas Por La Educacion v. El Paso Indep. Sch. Dist.*, No. EP-20-CV-170-DB, 2022 WL 2671864, at *2 (W.D. Tex. July 11, 2022) (citation omitted). As such, if a party fails to provide the necessary information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The ultimate burden of proving that the failure to disclose was substantially justified or harmless is on the party facing sanctions. *PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07–CV–563–RSP, 2012 WL 1034009, at *3 (E.D. Tex. Mar. 27, 2012); *see Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999). In deciding whether to exclude an expert witness for failure to comply with Rule 26(a)(2), the court is guided by four factors: (1) the party's explanation for its failure to disclose; (2) "the importance of the evidence;" (3) whether the opposing party is prejudiced by including the evidence; and (4) "the possibility of curing such prejudice by granting a continuance." *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

### III.   Discussion

**A.  The district judge should overrule Plaintiffs' objection to the form of the motion.**

    Plaintiffs contend that "Caterpillar incorrectly seeks discovery sanctions through a motion to strike." Resp. 3. In support, Plaintiffs cite to Federal Rule of Civil Procedure 12(f), which states

that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Thus, they reason, motions to strike are "meant for pleadings, not for discovery issues." Resp. 3 (emphasis omitted). Caterpillar disagrees, asserting that "challenging a late-designated expert" via a motion to strike is "well-settled" practice. Reply 2 (collecting cases).

Plaintiffs cite no caselaw supporting their argument, and the Court has found no controlling authority proscribing the use of a motion to strike to challenge anticipated expert testimony. The Court has located, however, numerous decisions within this district where motions to strike experts were considered for varying reasons, including the failure to comply with disclosure requirements under the Federal Rules of Civil Procedure. *See, e.g.*, *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2022 WL 3019795, at *1 (N.D. Tex. July 29, 2022); *Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*, No. 7:12–cv–00133–O, 2014 WL 3744976, at *1 (N.D. Tex. July 30, 2014); *Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, No. 3:05-CV-0289-D, 2006 WL 5127278, at *1 (N.D. Tex. May 31, 2006). Because this Court has previously considered motions to strike in relation to expert testimony, the undersigned recommends that the district judge overrule Plaintiffs' objection to the form of Caterpillar's motion.[7]

### B. Plaintiffs have failed to demonstrate good cause for their failure to timely provide required information for Huerta's expert report.

The Court must first address the timeliness of Plaintiffs' disclosure. Plaintiffs were required to disclose expert reports by August 16, 2021. *See* ECF No. 20. They failed to do so, instead timely disclosing only Huerta's name and the general scope of his proffered testimony. *See* ECF No. 35, at 1. Plaintiffs then disclosed Huerta's preliminary report almost seven months

---

[7] The undersigned further notes that because the substance of a motion controls over the label or heading attached (*Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003)), the Court may still consider the motion, even if it should have been designated as a motion to exclude or similar nomenclature.

after the expert designation deadline expired (ECF No. 58), and the complete report another ten months after that.  ECF No. 91.

"Initial expert disclosures are expected to be 'full and complete.'"  *Koenig*, 2018 WL 297616, at *3 (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016)).  "Under Rule 26(e), a party must supplement or correct an expert report upon learning the report is 'incomplete or incorrect' in some material respect."  *Albritton v. Acclarent, Inc.*, No. 3:16-cv-03340-M, 2020 WL 11627275, at *13 (N.D. Tex. Feb. 28, 2020).  While this rule allows parties to supplement their expert reports, supplemental disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information."  *Koenig*, 2018 WL 297616, at *3 (citation omitted).  Accordingly, any attempt to characterize Plaintiffs' late disclosure of Huerta's initial report as a mere "supplement" is unavailing.  The initial expert designation wholly failed to satisfy Rule 26(a)(2)(B)'s requirements—that is, Plaintiffs failed to provide a report or supply any of the information contemplated in subsections (i)–(vi).  *See Wilson v. Home Depot U.S.A., Inc.*, No. 3:12–CV–5292–B, 2014 WL 1882024, at *2 (N.D. Tex. May 12, 2014) (concluding plaintiff's initial expert designation did not comport with Rule 26, "which requires a party include reports that are 'detailed and complete' rather than 'sketchy and vague,'" but plaintiff "provided nothing more than the names and addresses of the four doctors on which he hoped to rely" (citations omitted)).  The undersigned therefore finds that Plaintiffs' March 2022 disclosure was not a mere supplement to their initial disclosure, meaning that Plaintiffs failed to timely provide Huerta's required Rule 26 information.

Moreover, Plaintiffs' first "supplemental" disclosure was still inadequate.  As Caterpillar notes—and Plaintiffs concede—Huerta's preliminary report did not satisfy Rule 26(a)(2)(B)(i), (v), and (vi).  *See Mot.* 6–7, 10–12, 15–16; Resp. 4–5.  In other words, the report is "preliminary"

in that it does not contain a complete statement of all opinions Huerta will express (as later disclosed in the Amended Report) and the basis for such opinions, and also fails to include a statement about his compensation or a list of all other cases during the last four years in which Huerta has served as an expert witness. *See* ECF No. 58-1. There is no question that "[p]reliminary reports [do] not satisfy the express terms of Rule 26." *United States ex rel. DeKort v. Integrated Coast Guard Sys.*, No. 3:06-CV-1792-O, 2010 WL 11614901, at *3 (N.D. Tex. Mar. 25, 2010); *accord Meier v. UHS of Del., Inc.*, No. 4:18-cv-00615, 2020 WL 923952, at *5 (E.D. Tex. Feb. 26, 2020); *Young v. Brand Scaffold Servs., LLC*, No. 1:07–CV–917, 2009 WL 4674050, at *2 (E.D. Tex. Feb. 24, 2009); *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001). More specifically, expert disclosures that omit the information discussed in subsections (v) and (vi) are incomplete. *See Johnson v. State Farm Lloyds*, No. 4:21-CV-158-Y, 2022 WL 16901977, at *4 (N.D. Tex. Oct. 12, 2022); *D & R Full Serv., LLC v. Hardin Cnty. Diesel & Auto Repair*, No. 1:18-CV-115, 2019 WL 5390104, at *5 (E.D. Tex. Jan. 22, 2019). As such, both Plaintiffs' initial and first supplemental disclosures were insufficient under Rule 26.

As to Plaintiffs' disclosure of Huerta's "Amended Report," the undersigned first observes that it apparently cures the initial report's deficiencies—meaning, it is no longer preliminary (i.e., includes his substantive opinions and their bases), it discloses his compensation, and the report includes a list of all other cases in which Huerta has provided testimony. *See* ECF No. 91-1. Moreover, Caterpillar's supplemental brief notably does not challenge the substance of Huerta's amended report. *See* ECF No. 95. The question remains, however, whether Huerta's amended report can be considered a supplement to Huerta's preliminary report such that Plaintiffs' disclosures can be construed as having been made in March 2022 as opposed to January 2023.

As noted above, supplemental expert disclosures under Rule 26(e) "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996). When "the analysis and opinions in the second report [are] largely new rather than supplementary," the second disclosure cannot qualify as a supplemental expert report under Rule 26(e). *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d at 372. Here, a review of Huerta's preliminary report and amended report requires a finding that the latter was not supplementary. While there is some overlapping information, most of the parallel material provides context rather than analysis of the core issues. Indeed, the preliminary report includes *no* analysis of the subject wheel system beyond support for Huerta's mistaken conclusion that the wheel assembly was not the same system involved in Mr. Lucero's accident. *See* ECF No. 58-1. On the other hand, the amended report includes Huerta's analysis of the wheel system's alleged deficiencies and his theorized cause of the accident. *See* ECF No. 91-1. The amended report also includes discussions of Caterpillar's user and service manuals, the historical development of multi-piece wheel systems, design safety devices, and Occupational Safety and Health Administration (OSHA) regulations— none of which appear in the preliminary report. *Compare* ECF No. 58-1, *with* ECF No. 91-1. The sheer volume of material makes this point abundantly clear: the initial report is 14 pages, and the amended report spans 73. *See* ECF Nos. 58-1, 91-1. In short, the undersigned finds that Plaintiffs' January 2023 disclosure cannot qualify as a supplement under Rule 26(e). *See Harmon v. Ga. Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012) (per curiam) (finding no abuse of discretion where district court determined that plaintiffs failed to timely comply with Rule 26 where (1) their initial report did not meet the rule's criteria and (2) a "supplemental" report satisfying the criteria was provided after the deadline).

Thus, Plaintiffs' compliant expert disclosures as to Huerta were approximately seventeen months late.  The Court must therefore exclude Huerta's testimony unless Plaintiffs can demonstrate that their "failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). As noted above, such a finding requires consideration of the following four factors:  (1) party's explanation for its failure to disclose; (2) importance of the evidence; (3) prejudice to the opposing party; and (4) possibility of curing through a continuance. *Tex. A&M Rsch. Found.*, 338 F.3d at 402.

### 1.  Explanation for Failure to Comply

The Court first considers Plaintiffs' proffered reason for failing to timely provide Huerta's complete expert report. *See Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).  As an initial matter, Plaintiffs do not provide any satisfactory explanation as to why they could not comply with Rule 26(a)(2)(B)(v) and (vi)—i.e., the rules addressing disclosure of compensation and other cases in which the expert has testified.  Plaintiffs originally claimed that they were unable to provide a list of "all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition" because Huerta did not keep such a record.  Resp. 5.  Yet, Huerta's amended report contains this information.  *See* ECF No. 91-1.  Plaintiffs have not addressed this contradiction.  *See* ECF No. 91.  As a result, the Court finds that Plaintiffs have failed to provide adequate justification for their failure to supply the required information under subsections (v) and (vi).  *See Liberty Ins. Corp. v. Omni Constr. Co.*, No. 4:21-cv-02119, 2022 WL 18402560, at *5 (S.D. Tex. June 15, 2022) ("The Rules do not . . . condition the requirements for expert disclosures on the 'availability' of information (or lack thereof) about the proffered experts . . . ."); *Thomas v. Hunt Cnty.*, No. 3:10–cv–2401–M, 2011 WL 2412957, at *2 (N.D. Tex.

June 15, 2011) (finding that the first factor "clearly weigh[ed] in favor of excluding" the expert because the party "provided no explanation for her failure to file the report by the deadline").

Turning to subsection (i), Plaintiffs primarily argue that the wheel assembly dispute prevented their timely disclosure of Huerta's complete opinions. *See* Resp. 4–5. That is, Huerta's initial report was "preliminary because, at the time, Huerta was under the impression that he was inspecting an exemplar wheel" rather than the wheel involved in Mr. Lucero's accident. *Id.* This explanation does not, however, carry the day and in actuality further undermines Plaintiffs' position.

First, as Caterpillar observes (Mot. 3), Plaintiffs have admitted that Huerta was not provided the wheel assembly until *almost three months after* the expert designation deadline. *See* ECF No. 68, at 4–5 (explaining that Plaintiffs purchased the wheel assembly in late May 2021 and delivered it to Huerta in early November); *see also* ECF No. 20 (requiring Plaintiffs to designate expert witnesses by Aug. 16, 2021). It was Huerta himself, based on his inspection *in November*, that questioned whether the purchased wheel assembly was the one involved in Mr. Lucero's accident. ECF No. 68, at 5–8. This necessarily means that Huerta's report would have been late even without the wheel assembly dispute, yet Plaintiffs provide no explanation for this circumstance. *Cf. Fujita v. United States*, 416 F. App'x 400, 402–03 (5th Cir. 2011) (affirming district court's denial of motion to extend expert designation deadline and subsequent grant of summary judgment where plaintiff did not request his medical records until the day before the deadline, noting that the basis for his claimed delay in procuring an expert, i.e., not having obtained necessary medical records, was simply "a pretext disguising an initial lack of diligence in finding an expert").

14

Further, Plaintiffs did not provide Huerta's preliminary (and incomplete) report until March 4, 2022—about four months after Huerta was given the wheel assembly and nearly seven months after the designation deadline. Although the wheel assembly dispute could reasonably account for some of this delay, Plaintiffs apparently did not raise the wheel identity question with Caterpillar until the filing of Huerta's report. *See* Mot. 16 (noting that Plaintiffs "waited another four months to furnish a preliminary report in which Dr. Huerta claims, for the first time, that the [w]heel [a]ssembly is not the one involved in the incident"). Yet, Plaintiffs do not describe their actions or diligence in addressing a core question central to their claim by explaining, e.g., (1) why the issue could not have been raised at an earlier date, (2) if or by what means they attempted to locate the "correct" wheel, (3) when and why they concluded the best course of action would be for Huerta to write a preliminary report rather than first resolving the wheel dispute, etc. *Cf. Sterling v. United States*, No. 3:18-CV-0526-D, 2020 WL 2425648, at *6 (N.D. Tex. May 12, 2020) (finding plaintiff's justification inadequate because "he could have notified the Court of his inability to comply" if he "'faced difficulty' acquiring the necessary information to provide the requisite disclosures," but "he did no such thing" (citation omitted)), *aff'd*, 834 F. App'x 83 (5th Cir. 2020). Without more, Plaintiff has provided no satisfactory explanation for how the dispute justified Plaintiffs' late disclosure of Huerta's preliminary, non-compliant report.

Moreover, the wheel dispute does not explain why Plaintiffs failed to timely provide the amended report. The parties resolved the wheel question on April 28, 2022. ECF Nos. 73, 74. Plaintiffs then represented that they would submit Huerta's amended report on July 1, 2022 (Resp. 4), but they did not do so. The Court stayed the case between July 14 and October 31, 2022 (ECF No. 83), and then denied Plaintiffs' motion to extend the stay on December 15, 2022. ECF No. 89. Yet, Plaintiffs did not file Huerta's amended report until after the January 12, 2023 status

15

conference, during which the undersigned questioned Plaintiffs' counsel about his failure to supply the report. ECF Nos. 91, 92. Counsel initially asserted that it was not provided within 45 days, as they represented it would be, "due to the stay order." Tr. 2:40–:50. When the Court noted that the case was stayed two weeks *after* the expiration of the 45 days, counsel first theorized that he "may have mis-calendered the time on that," and later explained that they "could not get it done in the 45 days" because Huerta was "busy on other cases." Tr. 2:50–3:12, 11:39–12:02. Counsel then again suggested that the amended report had not been provided due to the subsequent stay order. Tr. 12:03–:14. Yet, Huerta's amended report is dated December 20, 2022—meaning that the expert did not prepare and complete his amended report until after the expiration of the stay, nearly eight months after the resolution of the wheel assembly dispute, and more than six months after the date Plaintiffs represented it would be supplied. ECF No. 91-1. Although the stay order reasonably accounts for some of this time, Plaintiffs' only other explanation for the extended delay is counsel's vague representation about Huerta's busy schedule. But Plaintiffs fail to offer any explanation for their failure to inform Caterpillar—let alone the Court—of their inability to comply with the 45-day representation or otherwise file the amended report before the stay.[8]

Finally, as noted above, Huerta's amended report is dated December 20, 2022, but Plaintiffs did not disclose it until January 12, 2023. At the January 12 status conference, Plaintiffs' counsel stated that the amendment was ready to serve but they elected to wait until after the hearing. Tr. 2:23–:38 (asserting that Plaintiffs were "ready to serve it and then [they] got the notice of [the] hearing so [they] waited, but [they] could serve it [that day]"). This means that Plaintiffs unnecessarily waited an additional 23 days to provide Huerta's amended report. Although there

---

[8] Plaintiffs had approximately 77 days in total to provide the amended report after the resolution of the wheel dispute and before the Court stayed the case. *See* ECF No. 74 (Apr. 28, 2022 status conference minute entry reflecting that the parties resolved the dispute); ECF No. 83 (order staying case dated July 14, 2022).

may be circumstances in which 23 days would not be significant, this is not one of those cases. This final delay is further proof of Plaintiffs' overall lack of diligence in meeting deadlines under the Court's scheduling order. *See Rahmani v. Wal-Mart Stores Tex., LLC*, No. EP–13–CV–311– KC–MAT, 2014 WL 12591735, at *3 (W.D. Tex. June 5, 2014) (concluding that party's late Rule 26 disclosures demonstrated a lack of due diligence, particularly where party "inexplicably waited more than a month" after counsel learned of client's "additional medical providers"); *cf. Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.*, No. 3:10–CV–1897–D, 2012 WL 3150957, at *5 (N.D. Tex. Aug. 3, 2012) (noting party's "lack of diligence by not filing its motion to amend the scheduling order until at least 21 days after it should have known that it could not comply" (footnote omitted)).

In short, although Plaintiffs offer some explanation, the record does not demonstrate a sufficient basis for excusing Plaintiffs' failure to timely supply Huerta's Rule 26 disclosures during the seventeen-month delay period. Accordingly, this factor weighs in favor of excluding the testimony. *See Harmon*, 476 F. App'x at 37 (holding that "district court could reasonably conclude that [plaintiffs'] justification was inadequate" where "the necessary information was entirely under their own control," and their claim that the testing "took a long time due to circumstances outside of their control" did not provide sufficient explanation because "they made no effort to inform the court of this issue before the deadline for expert reports"); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (rejecting argument that plaintiffs missed the discovery deadline because their expert witnesses "were simply unable to complete their work within the deadline," where it appeared that this was "due in large part to the failure of counsel to provide [the expert] with the information he needed to complete his analysis in a timely fashion"); *cf. Betzel v. State Farm*

*Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007) (explaining that the Fifth Circuit "take[s] seriously [a] lack of explanation").

### 2. Importance of the Testimony

The Court next considers the importance of Huerta's testimony to Plaintiffs' case. Caterpillar does not address this factor (*see* Mot. 1–16; Reply 2–6; Suppl. 1–5), and Plaintiffs merely state that they "understand the importance of Huerta's . . . testimony and opinion to their case." Resp. 5. They do not, however, discuss the scope of his testimony nor its intended purpose. *See id.* Nevertheless, Plaintiffs designated Huerta as a "liability expert" who is expected to "testify as to the chain of custody, test methodology, the test results, and levels of impairment." ECF No. 58, at 3; *accord* ECF No. 91, at 2. Huerta's amended report discusses the subject wheel system in general, the wheel assembly in Mr. Lucero's accident and its purported defects, Caterpillar's user and service manuals, the historical development of multi-piece wheel systems, design safety devices, and OSHA regulations. ECF No. 91-1, at 4–41.

Plaintiffs assert claims for strict products liability and negligence. ECF No. 61, at 4–5. Texas has adopted section 402A of the Restatement (Second) of Torts providing strict liability for the sale of defective products. *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–89 (Tex. 1967). "Basically, Section 402A subjects to liability the seller or manufacturer of a product sold 'in a defective condition unreasonably dangerous' to an ultimate user or consumer whose person or property is physically harmed by the product." *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1272 (5th Cir. 1974); *see also Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984) (A strict liability cause of action requires a showing "that: (1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the

producing cause of the injury to the user."); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (same).

"A negligence cause of action requires a different showing from a strict liability claim, even when the action is against the manufacturer." *Syrie*, 748 F.2d at 307 (citing *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978)). As the Supreme Court of Texas stated in *Gonzales*:

> The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production.

571 S.W.2d at 871. "Both negligent manufacturing and negligent design require a showing of a dangerous product." *Giovanni v. New Balance Athletics, Inc.*, No. 4:17-CV-3598, 2019 WL 1556470, at *2 (S.D. Tex. Feb. 25, 2019).

"Under Texas law, 'expert testimony is generally encouraged if not required to establish a products liability claim.'" *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016) (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007)). That is why "[p]roducts liability cases are quintessentially expert cases." *Martinez v. Ethicon Inc.*, No. 7:19-cv-00164, 2020 WL 2113638, at *2–3 (S.D. Tex. May 1, 2020). Indeed, "failure to designate experts almost always leads to summary judgment." *Id.* (citing *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 296 (5th Cir. 2019) (per curiam)) (finding that the plaintiff's failure to designate experts entitled the defendant to summary judgment on the plaintiff's product defect, manufacturing defect, failure to warn, and negligence claims). Specifically, Texas law requires expert testimony "when an issue involves matters beyond jurors' common understanding." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006); *accord* TEX. R. EVID. 702. As a result, where a product's alleged defect involves matters beyond common understanding, the plaintiff must offer expert testimony

in support of the claim. *See Johnson v. Ford Motor Co.*, No. 5:21-CV-023-H, 2022 WL 1471425, at *7 (N.D. Tex. May 10, 2022) (citing *Mack Trucks*, 206 S.W.3d at 583).

Here, Mr. Lucero was injured while replacing a tire on a Caterpillar model 950 H front end loader. Pls.' First Am. Compl. 2–3 ¶¶ 4.01–.02, 4.05; ECF No. 91-1, at 4. Huerta's testimony is intended to address whether: Caterpillar's wheel system was defective; those defects caused Mr. Lucero's accident; Caterpillar exercised care in its design and/or production of the product; and a safer alternative exists. *See* ECF No. 58, at 3; ECF No. 91, at 2; ECF No. 91-1, at 4–41. The undersigned concludes that, at least for purposes of evaluating Caterpillar's motion, such matters appear to require specialized and technical knowledge and are therefore beyond common understanding. *See Dizdarevic v. Goodyear Tire & Rubber Co.*, No. 4:19-CV-0963, 2020 WL 3513255, at *4 (S.D. Tex. Apr. 22, 2020) (concluding that negligence claims involving wheel assembly required expert testimony to establish causation); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 806 (Tex. 2006) ("Tire chemistry and design and the adhesion properties of tire components is a highly specialized field."); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 331–32, 339 (Tex. 1998) (agreeing "that expert testimony was probably necessary to show the feasibility of the alternative rim design which would have prevented" plaintiff's accident where "he was struck by an exploding . . . tire that he was mounting on a . . . rim"); *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 118 (Tex. App.—San Antonio 2004, pet. denied) (concluding that expert testimony was required to determine "which, among many, warnings and instructions should be printed on a [tire's] sidewall"). It then follows that Plaintiffs likely could not prove one or more essential elements of their product liability claims without Huerta's testimony.

Accordingly, this favor weighs in favor of allowing the testimony. *See Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 554 (N.D. Tex. 2005) (concluding that "the lack of expert testimony [was] outcome-determinative" and weighing that "in favor of permitting late designation").

### 3. Prejudice and Availability of Continuance to Cure Prejudice

Finally, the Court must consider any prejudice to Caterpillar in allowing the testimony, and the availability of a continuance to cure that prejudice (factors three and four). Plaintiffs aver that any prejudice to Caterpillar "is negligible" in light of the preliminary report because Caterpillar was "made aware of Huerta's preliminary opinions." Resp. 5–6. That is, Plaintiffs contend that "Caterpillar cannot be prejudiced if [it is] aware of the opinions" Huerta "intends to testify to at trial." *Id.* at 6. In addition, Plaintiffs note that Caterpillar has "not once sought discovery from or" sought to depose Huerta.[9] *Id.* In Caterpillar's view, however, Plaintiffs' late disclosure is prejudicial because "[n]ow, with less than a month remaining before expiration of an amended discovery deadline, Caterpillar and [its expert] will be forced to evaluate whether a supplemental report is necessary; potentially supplement [its expert]'s opinions and conclusions; and furnish [its expert] for deposition." Suppl. 4.

To begin, the Court rejects Plaintiffs' claim that Caterpillar suffers only "negligible" prejudice because Plaintiffs provided Huerta's preliminary report. This argument overlooks the fact that even the preliminary report was provided several months after the designation deadline. Moreover, the expert's initial report included no relevant analysis of the subject wheel system, the cause of Mr. Lucero's accident, or the information Mr. Huerta apparently relied on in reaching his opinions, e.g., Caterpillar's user and service manuals, the historical development of multi-piece

---

[9] Plaintiffs offer an additional argument that the Court does not consider, i.e., that Caterpillar cannot "be prejudiced because there is still a Defendant in this case that has not been served and has not filed an answer." Resp. 6 (footnote omitted). Not only do Plaintiffs fail to develop this assertion, but the party to which Plaintiffs refer has since been dismissed, rendering the argument moot. *See* ECF No. 89.

wheel systems, design safety devices, or OSHA regulations. *See supra* Section III.B. In other words, Plaintiffs provided very little, if any, of Huerta's expected testimony through the preliminary report. *See Harmon*, 476 F. App'x at 37 (concluding party's delay surely "resulted in some prejudice" to opposing party where the former "provided no usable information in their initial expert report" and "failed to provide *any* of [the expert]'s opinions as of the deadline").

Next, the Court does not find Caterpillar's failure to seek discovery from Huerta to be dispositive or persuasive. "Litigants in federal court are entitled to the disclosures that are required to be made under Rule 26(a)(2)(B), and it is not incumbent on" Caterpillar's counsel "to investigate or ferret out that information as best as it can through deposition or other means of discovery at the expense of its client" to make up for Plaintiffs' failure to comply with its obligations. *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 1436659, at *25 (N.D. Tex. Mar. 31, 2019) ("To accept Defendants' argument that inadequate, untimely, and last-minute disclosures are harmless whenever the opposing party has the opportunity to later depose the expert defeats the purpose of the rule and turns it on its head by shifting the burden to the opposing party . . . ."); *see Ratliff v. Marquette Transp. Co. Gulf-Inland, LLC*, No. 19-11299, 2021 WL 2911987, at *4 (E.D. La. July 12, 2021) ("A deposition cannot replace what information a disclosure must supply."); *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, No. 5:10-cv-131, 2018 WL 11358441, at *4 (S.D. Tex. Sept. 13, 2018) ("Defendant is entitled to this information [under Rule 26(a)(2)(B)] in order to allow it to properly interrogate and rebut the expert witness' qualifications and findings.").

Further, the Court agrees with Caterpillar that Plaintiffs' delay resulted in measurable prejudice. "The timing of the disclosure results in prejudice when, for instance, the opposing party must incur unreasonable additional costs that could have been avoided by an earlier disclosure, or

the party is precluded under the scheduling order from developing and presenting rebuttal evidence." *Hoffman v. L & M Arts*, No. 3:10–CV–0953–D, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013) (emphasis omitted); *see In re Complaint of C.F. Bean L.L.C.*, 841 F.3d at 373 (finding prejudice to defendant where plaintiff submitted an untimely second expert report, which would require defendant to spend "substantial time and expense" "[t]o properly rebut and re-depose" the expert). Although the Court advised the parties it would extend Caterpillar's discovery deadline if necessary (ECF No. 93, at 2 n.1), Caterpillar would still incur additional expenses should its rebuttal expert need to prepare a supplemental report, which by necessity would require wholesale review, evaluation, analysis, and preparation of a response to Huerta's opinions in their entirety. *See Geiserman*, 893 F.2d at 791 (considering "expense [to defendant] that would result from an extended" schedule to accommodate plaintiff's "failure to adhere to deadlines"); *Browning v. City of Balch Springs*, No. 3:96–CV–1411P, 1997 WL 361632, at *5 (N.D. Tex. June 20, 1997) (noting "unnecessary expense" would have prejudiced defendant if plaintiff were allowed to substitute its expert).

The disruption to the Court's schedule and Caterpillar's trial preparation similarly supports a finding of prejudice. *See Geiserman*, 893 F.2d at 791 (noting that allowing late expert disclosure "would have disrupted the [district] court's discovery schedule and the opponent's preparation"); *State Auto. Mut. Ins. Co.*, 2019 WL 1436659, at *26 ("Instead of focusing on preparing for the upcoming trial, Plaintiff [would] have to address any new materials in [defendant's] amended report and [would] likely [make a] request to conduct additional discovery."); *Wright v. Blythe-Nelson*, No. CIVA399CV2522D, 2001 WL 804529, at *5 (N.D. Tex. July 10, 2001) (concluding that defendants would be prejudiced by untimely disclosure because they would then have to re-engage in discovery process "at a time when they are otherwise preparing for trial"); *Browning*,

1997 WL 361632, at *5 (finding prejudice in part because "Defendants' preparation of the case would no doubt have suffered serious disruption").

Of equal, if not greater significance, is the question of whether a continuance would (or should be used to) cure any prejudice, particularly where a party has repeatedly disregarded the Court's scheduling order. "Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Distribuidora Mari Jose*, 2018 WL 11358441, at *5. Yet, if possible, "continuance, not exclusion, is the preferred means of dealing with a party's attempt to designate a witness out of order or offer new evidence." *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993); *see Harmon*, 476 F. App'x at 37 (distinguishing *General Dynamics* because the failure to timely designate experts in that case was due to "a reasonable interpretation of the" district court's scheduling order). Such a preference does not, however, mean that a district court must inevitably continue the case. *See AIG Eur., Ltd. v. Caterpillar, Inc.*, 831 F. App'x 111, 116 (5th Cir. 2020) (per curiam) ("While continuances are the preferred means of dealing with untimely expert reports, *they are the exception*." (emphasis added)). The Fifth Circuit has expressly advised that, in cases such as this, the "district court is not required to grant a continuance at such a late date in litigation." *Id.* (internal quotation marks and citation omitted). In addition, the Fifth Circuit has recognized that continuances are not appropriate where "the record reveals not just one, but several, violations of the court's scheduling order" and a continuance would thus neither punish the offending party "nor deter similar behavior in the future." *Harmon*, 476 F. App'x at 37 (citation omitted). Indeed, "the mere possibility that the case might be continued presents an insufficient basis for" allowing a late-designated witness (*Browning*, 1997 WL 361632, at *5), particularly where the offending party has previously violated the scheduling order or where the court has already continued deadlines. *See State Auto.*

*Mut. Ins. Co.*, 2019 WL 1436659, at *26 (concluding that "further extension" was "not a viable option" where the court had continued the trial date "a number of times"); *Qualls*, 226 F.R.D. at 554 (electing not to grant continuance to allow for late designation where the court had already continued the trial date due to the plaintiff's "untimely disclosure of fact witnesses").

This matter has been pending since August 2020 and has been stayed or otherwise delayed on multiple occasions. *See* ECF No. 1-3, at 1 (Original Petition filed in state court on Aug. 10, 2020); ECF No. 49 (granting motion to modify scheduling order); ECF No. 83 (staying case); ECF No. 93 (setting new deadlines after the expiration of the stay and granting Plaintiffs' request for extension of discovery deadline). Further delay could therefore enhance prejudice rather than prevent it. *See Harvey v. Caesars Ent. Operating Co.*, No. 2:11CV194–B–A, 2014 WL 12653851, at *4 (N.D. Miss. May 6, 2014) (finding that trial continuance was not warranted given that the case had been pending nearly three years, which was "much longer than most other cases on the docket"), *aff'd*, 2014 WL 12653852 (N.D. Miss. Aug. 15, 2014); *Logan v. Smithfield Foods, Inc.*, No. 4:05–cv–766, 2008 WL 8776116, at *1 (S.D. Tex. Aug. 25, 2008) (granting motion to strike late-designated expert and noting that any "continuance would further prejudice" the defendants because the matter had been pending three years and had twice been stayed); *see also Gaalla v. Citizens Med. Ctr.*, No. 6–10–14, 2012 WL 3205635, at *2 (S.D. Tex. Aug. 3, 2012) ("The Court is not inclined to order continuances in light of the amount of time this case has been pending and the approaching trial date"—i.e., "more than two years into the litigation and less than six months before trial.").

Moreover, Plaintiffs have repeatedly failed to satisfy their duty to disclose necessary information in support of Huerta's expert witness designation. This is not a case in which the offending party has kept the Court (or opposing party) apprised of any delays and proactively

sought leave before it missed a deadline. Neither have Plaintiffs acted diligently to remedy their failures nor have they provided sufficient justification for same. The undersigned therefore finds that a continuance here "would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Geiserman*, 893 F.2d at 792; *see Wright*, 2001 WL 804529, at *5 ("The court should not allow plaintiff's unjustified tardiness in designating expert witnesses to dictate the focus of defendants' counsel's attention during the critical period of preparation that every able trial lawyer knows precedes a trial."); *Browning*, 1997 WL 361632, at *5 ("Plaintiffs have to date made no effort to demonstrate to the Court that a continuance would deter future dilatory behavior on their part rather than merely create further delay and added expense.").

For these reasons, this is not the exceptional case in which a continuance is the appropriate means of dealing with Plaintiffs' late disclosure and the resulting prejudice it creates—the final two factors therefore weigh in favor of excluding the testimony.

### 4. Together, the factors weigh in favor of granting Caterpillar's motion.

In sum, the Court cannot conclude that Plaintiffs' untimeliness was substantially justified or harmless—Huerta's testimony should therefore be excluded. *See Honey-Love v. United States*, 664 F. App'x 358, 362 (5th Cir. 2016) (per curiam) (noting that "the presumptive sanction for failing to disclose a testifying expert or supply a required expert report or summary disclosures is to exclude or limit the expert's testimony unless the failure was substantially justified or harmless"). Plaintiffs have provided insufficient justification for their seventeen-month delay and allowing the testimony would cause Caterpillar prejudice and require an additional continuance. *See 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288–89 (5th Cir. 1991) ("Although the degree of prejudice suffered by the [opposing party] due to the late designation of an expert would not have been great, a district court still has the discretion to control pretrial discovery and sanction a

party's failure to follow a scheduling order," which "is particularly appropriate" where the offending party does not "provide an adequate explanation for their failure to identify their expert within the designated timetable."). Any further delay based on this issue would impermissibly reward Plaintiffs' lack of diligence and thereby fail to deter such conduct in the future. *See id.* at 1289 (recognizing that adherence to "scheduling orders are critical in maintaining the integrity of judicial proceedings").

In addition, while the Court recognizes the importance of Huerta's testimony, "such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders" because the significance of the testimony "underscores the need" to timely designate the expert and highlights the "reason to be sure its introduction [is] properly grounded." *Geiserman*, 893 F.2d at 791–92; *accord Barrett*, 95 F.3d at 381 ("[T]he claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible.");[10] *Browning*, 1997 WL 361632, at *5 ("[G]iven Plaintiffs' claims regarding the overriding significance of the anticipated testimony, their rather cavalier approach to ensuring that an expert would be retained in sufficient time to make proper disclosures appears only that much more puzzling."). Indeed, "it is not incumbent on the court to give 'ineffective litigants a second chance to develop their case.'" *State Auto. Mut. Ins. Co.*, 2019 WL 1436659, at *26 (quoting *Reliance Ins. Co. v. La. Land and Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997)). The undersigned

---

[10] While the panel in *Betzel* posited that these cases apply the importance of the testimony factor "in unexpected ways," thereby "standing it on its head" (480 F.3d at 707–08), other Fifth Circuit panels have continued to use the principle set forth in both *Geiserman* and *Barrett*. *See, e.g., Batiste v. Lewis*, 976 F.3d 493, 501 (5th Cir. 2020) (citing *Geiserman* and noting that non-movant's asserted importance of testimony underscored need for timely expert witness designation); *Garza v. Allstate Tex. Lloyd's Co.*, 284 F. App'x 110, 112 (5th Cir. 2008) (per curiam) (relying on *Geiserman* in observing that "the importance of such proposed [expert] testimony cannot singularly override the enforcement of local rules and scheduling orders" (citation omitted)).

therefore recommends that the United States District Judge grant Caterpillar's motion to strike Huerta as an expert witness and exclude his testimony.

### C. The United States District Judge should strike Mills as an expert witness unless Plaintiffs timely provide a supplemental report.

Caterpillar also asks the Court to strike Mills as an expert witness and exclude his testimony. Mot. 6–8, 15–16. As set forth above, Plaintiffs were required to disclose expert reports by August 16, 2021. *See* ECF No. 20. They failed to do so, instead disclosing only Mills' name and the general scope of his proffered testimony. *See* ECF No. 35, at 4–5. Plaintiffs then disclosed Mills' report seven months after the expert disclosure deadline expired. ECF No. 58. Caterpillar contends that Mills' report is both untimely and deficient because he failed to provide a list of all other cases in which he has testified as an expert and a statement about his compensation. Mot. 6–7, 15–16; Reply 5–6; *see supra* note 5.

The Court agrees that Plaintiffs failed to timely provide Mills' expert report. As explained above, "expert disclosures are expected to be 'full and complete.'" *Koenig*, 2018 WL 297616, at *3 (citation omitted). Parties may not unilaterally extend the expert deadline by attempting to "deliver the lion's share of its expert information" through supplemental disclosures. *Sierra Club, Lone Star Chapter*, 73 F.3d at 571. Plaintiffs' initial designation was wholly inadequate in that Plaintiffs failed to provide a report or supply any of the information contemplated in Rule 26(a)(2)(B)(i)–(vi). *See* ECF No. 35. Accordingly, Plaintiffs' March 2022 disclosure cannot qualify as a supplement, meaning that Mills' report was provided seven months late. *See In re Complaint of C.F. Bean L.L.C.*, 841 F.3d at 372; *Wilson*, 2014 WL 1882024, at *2. Moreover, the Court further agrees that Mills' belated report does not include required information under subsections (v) and (vi)—i.e., the report does not contain a list of all other cases in which he has testified as an expert or a statement of compensation. *See* ECF No. 58-2. Nor have Plaintiffs

28

supplied the missing material or otherwise demonstrated an intent to do so. The Court must therefore exclude Mills' testimony unless Plaintiffs can demonstrate that their "failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Plaintiffs provide no justification for not timely providing the report or failing to disclose all necessary information. *See* Resp. 1–6. Accordingly, this factor weighs in favor of exclusion. *See Ratliff*, 2021 WL 2911987, at *3 (concluding plaintiff could not "cure his insufficient disclosures with an untimely addendum" where there was "no explanation why proper disclosures were not submitted in the first instance"); *Fuller v. Werner Enters., Inc.*, No. 3:16-CV-2958-BK, 2018 WL 10380370, at *3 (N.D. Tex. Nov. 29, 2018) (weighing in favor of exclusion fact that defendants had "not provided an explanation for their failure to disclose" certain information required by Rule 26); *Erving v. Dall. Hous. Auth.*, No. 3:16-CV-1091-L, 2018 WL 4409797, at *15 (N.D. Tex. Sept. 17, 2018) (striking expert where plaintiff "provide[d] no explanation to justify her failure to comply with Rule 26"); *see also Betzel*, 480 F.3d at 707 (explaining that the Fifth Circuit "take[s] seriously [a] lack of explanation").

Turning to the importance of Mills' testimony, Plaintiffs do not sufficiently brief this factor, beyond merely stating that they "understand the importance of . . . Mills' testimony and opinion to their case." Resp. 5. Nevertheless, Plaintiffs designated Mills as an economic damages expert who is expected to testify about "Mr. Lucero's past and future lost earnings based upon employment records" and "other damages arising by virtue of Mr. Lucero's lost wages." ECF No. 58, at 4. Mills' report discusses Mr. Lucero's alleged lost income, fringe benefits, household services, and incurred medical expenses. *See* ECF No. 58-2. It appears that Mills' expected testimony would be helpful, but not essential to Plaintiffs' products liability claims. *See, e.g.*, *Russell v. Hall*, No. 3:19-cv-874-S, 2020 WL 9848765, at *5–6 (N.D. Tex. Dec. 4, 2020)

(concluding that plaintiff sufficiently supported award for medical expenses and lost wages based upon his own testimony and affidavits detailing medical treatments), *R. & R. adopted by* 2021 WL 2226490 (N.D. Tex. June 2, 2021); *Williams v. Biesiada*, No. H–13–0990, 2014 WL 710382, at *3 (S.D. Tex. Feb. 21, 2014) ("While an expert economist is not essential to proving [plaintiff's] underlying claims, an economist's testimony is important to calculating lost future earnings."). Beyond this, the Court cannot accurately determine the relative importance of Mills' testimony because Plaintiffs did not meaningfully address this factor. *See Thomas*, 2011 WL 2412957, at *2 ("[Plaintiff's] failure to respond is also relevant to the second factor—the importance of the testimony—because it is usually the party designating the expert who is most likely to possess information about the importance of that expert's testimony."). "Thus, at best, this is neutral." *Id.*

The Court next considers any prejudice to Caterpillar in allowing the testimony, and the availability of a continuance to cure that prejudice. Plaintiffs aver that "Caterpillar cannot be prejudiced if" it is now "aware of the opinions" Mills "intends to testify to at trial." Resp. 6. Further, Plaintiffs contend that "Caterpillar has been put on notice of" the testimony, and its failure to seek "discovery from or" otherwise depose Mills precludes a finding of prejudice. *Id.* Again, this perspective misses the mark. Caterpillar is "entitled to the disclosures" and the burden does not fall on Caterpillar "to investigate or ferret out that information as best as it can through deposition or other means of discovery at the expense of its client." *State Auto. Mut. Ins. Co.*, 2019 WL 1436659, at *25; *see Ratliff*, 2021 WL 2911987, at *4.

Further, the Court cannot ignore that Plaintiffs provided Mills' report seven months after the deadline and even after being produced was nevertheless still incomplete. This suggests that Caterpillar suffered at least some degree of prejudice. *See Emerson v. Johnson & Johnson*, No. H-17-2708, 2019 WL 764660, at *3 (S.D. Tex. Jan. 22, 2019) (finding prejudice where plaintiff's

"expert designations were filed over eight months after the scheduling order's deadline passed" and still "fail[ed] to disclose all information required by Rule 26(a)"); *Distribuidora Mari Jose*, 2018 WL 11358441, at *4 ("Defendant is entitled to this information [under Rule 16(a)(2)(B)] in order to allow it to properly interrogate and rebut the expert witness' qualifications and findings."); *see also Geiserman*, 893 F.2d at 791 (noting that allowing late expert disclosure "would have disrupted the [district] court's discovery schedule and the opponent's preparation"); *Bustamante v. State Farm Lloyds*, No. 5:15–CV–184, 2016 WL 10655593, at *1 (S.D. Tex. June 20, 2016) (characterizing expert report disclosure that was four months late as an "arguabl[y] egregious" delay).

On the other hand, Plaintiffs' disclosure of Mills' report seven months after the deadline resulted in significantly less harm than their seventeen-month delay in disclosing Huerta's report. First, because Plaintiffs supplied Mills' expert report before the expiration of the rebuttal expert and discovery deadlines, Caterpillar was not "precluded under the scheduling order from developing and presenting rebuttal evidence" as to the substance of Mills' opinion. *Hoffman*, 2013 WL 81578, at *2; *see Albritton*, 2020 WL 11627275, at *15 (finding prejudice where defendant was foreclosed from offering rebuttal opinions "because the discovery period ha[d] ended"); *cf. State Auto. Mut. Ins. Co.*, 2019 WL 1436659, at *25 (noting that plaintiff was prejudiced because defendants' supplemental disclosures were made after the expert designation deadline, depriving plaintiff "of the opportunity to designate any rebuttal experts"). Next, although Mills' report is still incomplete, the omissions relate to potentially less substantive information. Rather than core material such as Mills' opinions or the facts upon which he bases those conclusions, the missing information (compensation and prior testimony) involves data that can be provided to Caterpillar and likely used for trial preparation without the necessity of a deposition. *See Johnson*, 2022 WL

16901977, at *4 (concluding that expert "should not be stricken for failure to" include "a statement of his compensation"); *Robinson v. Am. Med. Response, Inc.*, No. 3:08-cv-153-WHB-LRA, 2009 WL 10675167, at *7 (S.D. Miss. Sept. 24, 2009) (declining to strike supplemental report where report did not include "a list of cases in which [the expert] previously testified"). Lastly, Caterpillar itself does not claim to have been prejudiced by Mills' untimely report. *See* Mot. 1–16; Reply 1–6; Suppl. 1–5. On balance, the undersigned therefore concludes that Caterpillar has not been meaningfully prejudiced.

Finally, for the reasons stated above (*see supra* Section III.B), a continuance is not advisable given the amount of time this action has been pending and the impact of various other delays. *See Harvey*, 2014 WL 12653851, at *4; *Gaalla*, 2012 WL 3205635, at *2; *Logan*, 2008 WL 8776116, at *1. Moreover, Plaintiffs' conduct regarding its expert designations has been disturbingly non-compliant. Plaintiffs have failed to: (1) satisfy their duties under the scheduling order and federal rules; (2) keep the Court and opposing party informed as to the cause for any delays; and (3) act diligently to remedy their failures or demonstrate good cause for appropriate extensions during timelines provided by the Court's scheduling order. *See Wilson*, 2014 WL 1882024, at *5 (concluding that, where plaintiff "failed to cure the deficiencies," there was "little indication that granting . . . more time to comply . . . would be beneficial"); *Thomas*, 2011 WL 2412957, at *3 ("It is unclear whether a continuance could cure the prejudice to Defendants because, given Thomas's complete failure to respond to this Motion, the Court cannot predict whether more time would lead to Thomas's compliance."); *Browning*, 1997 WL 361632, at *5.

As already noted, the Fifth Circuit has advised that striking a late designated expert "is particularly appropriate" where the offending party has "failed to provide an adequate explanation for their failure to identify their expert within the designated timetable." *1488, Inc.*, 939 F.2d at

1289; *accord Honey-Love*, 664 F. App'x at 362 (noting that "the presumptive sanction for failing to disclose a testifying expert or supply a required expert report or summary disclosures is to exclude or limit the expert's testimony unless the failure was substantially justified or harmless"). Indeed, Plaintiffs' complete lack of explanation for their failure to supply Mills' report and provide all required information within that report is troubling. *See Ortiz v. Minn. Life Ins. Co.*, No. 4:20-CV-00923-SDJ-CAN, 2022 WL 4376406, at *4 (E.D. Tex. Mar. 11, 2022) (finding that good cause did not exist where it was undisputed that the expert report was disclosed months after the expert deadline "without requesting or obtaining leave" from the court and no explanation was given "for the untimely disclosure"); *Smotherman, v. Bayview Loan Servicing, LLC*, No. 1:19-CV-978-DAE, 2022 WL 656198, at *3 (W.D. Tex. Jan. 26, 2022) (finding no good cause where plaintiff failed to "identify any information in the report that was unavailable before the disclosure deadline"). Even when faced with the possible exclusion of Mills as an expert witness, Plaintiffs provided very little briefing and failed to cure the identified deficiencies, further evincing a laissez-faire attitude toward the issue. *See TBC-JP-LR, JV v. Allied Prop. & Cas. Ins. Co.*, No. 4:17-CV-131-Y, 2018 WL 10563033, at *5 (N.D. Tex. Sept. 10, 2018) (excluding evidence in light of "Plaintiff's failure to justify its tardiness . . . coupled with its prior lackadaisical attitude toward its disclosure obligations, the obvious prejudice to Defendant, and the fact that the Court" already granted "continuances of the discovery deadline"); *Thomas*, 2011 WL 2412957, at *3 (finding exclusion "particularly appropriate in light of" plaintiff's "failure to respond to" the motion to strike); *see also* FED. R. CIV. P. 26(e)(1)(A) (instructing that parties must supplement "*in a timely manner* if the party learns that in some material respect the disclosure . . . is incomplete" (emphasis added)).

Nevertheless, the apparent lack of meaningful prejudice to Caterpillar—even when accounting for the report's remaining inadequacies—is significant. While a close call, considering

the factors and relevant circumstances as a whole, the undersigned finds sufficient distinction between Plaintiffs' conduct concerning Huerta's report and that of Mills' so as to not recommend exclusion. In sum, the degree of non-compliance in regard to Huerta, and what the undersigned believes dictates exclusion—e.g., the length of the delay and resulting extended disregard of the Court's order, the depth of the substantive deficiency by not supplying Huerta's substantive opinions and bases for same, and resulting prejudice to Caterpillar—is not present with Mills, despite the remaining deficiencies regarding compensation and prior testimony. Thus, notwithstanding Plaintiffs' less than diligent conduct, Plaintiffs should be given one final opportunity to provide a compliant report as to Mills. *See, e.g.*, *Johnson*, 2022 WL 16901977, at *4 (declining to strike expert and ordering plaintiff to file an amended report); *Bigelow v. N.Y. Lighter Co.*, No. A-03-CA-340 LY, 2005 WL 6742497, at *4 (W.D. Tex. June 27, 2005) (concluding that exclusion was not warranted because plaintiff would "not be unduly prejudiced" even though defendant "failed to articulate a reason for its untimely expert disclosures").

The undersigned recommends that the United States District Judge grant Caterpillar's Motion to Strike Mills and exclude his testimony *unless* Plaintiffs provide an amended report curing the identified deficiencies within fourteen (14) days from the entry of these findings, conclusions, and recommendation. Should Plaintiffs file a complete report, the district judge should deny Caterpillar's motion and allow Mills' late disclosure.

## IV.    Recommendation

For these reasons, the undersigned **RECOMMENDS** that the United States District Judge **GRANT in part** Caterpillar's Motion to Strike Plaintiffs' Late Designation of Expert Witnesses. ECF No. 71. Specifically, the district judge should **STRIKE** Huerta as an expert witness and exclude his testimony.

The district judge should further **STRIKE** Mills as an expert witness and exclude his testimony unless Plaintiffs provide a supplemental report curing the outlined deficiencies within **fourteen (14) days** from the entry of these findings, conclusions, and recommendation. Should Plaintiffs file a complete report within the designated timeframe, the district judge should **DENY** Caterpillar's motion as to Mills.

## V.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February *10*, 2023.

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**