IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ERIC LUCERO & WHITNIE POTTS, | |
| Plaintiffs, | |
| v. | 2:20-CV-207-Z-BV |
| WHEELS INDIA, LTD., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Default Judgment ("Motion") (ECF No. 119), filed June 7, 2024, and the Magistrate Judge's Findings, Conclusions, and Recommendations ("FCR") (ECF No. 125), filed February 13, 2025. Plaintiffs objected to the Magistrate Judge's FCR on March 6, 2025. ECF No. 132 Having reviewed the briefing, relevant law, and FCR, the Court **OVERRULES** Plaintiffs' objections except their objection on disfigurement damages, **ADOPTS** the FCR as modified, **GRANTS** the Motion for Default Judgment, and **AWARDS** Plaintiffs $440,274.89 plus prejudgment and postjudgment interest.

BACKGROUND

Eric Lucero suffered injury from an "explosive separation" of a split tire ring when he changed a tire on a Caterpillar wheel loader. ECF No. 61 at 3–4. The split ring blew off the tire while Mr. Lucero checked an air hose, struck him in the head, and knocked him unconscious. *Id.* An ambulance took Mr. Lucero to the hospital where he received treatment for multiple skull and orbital bone fractures, spent a week in a coma, and two total weeks in the hospital. ECF No. 125 at 2. After the accident, Mr. Lucero suffered headaches and an aversion to light and noise. He withdrew from his family and social life, lived in his garage for two years, and experienced significant sleep issues.

Mr. Lucero and his common-law wife, Whitnie Potts, sued several parties including Caterpillar Inc. and Wheels India, Ltd. in Texas state court. ECF No. 1. Defendants removed the case to federal court. Many Wheels India service problems ensued. *See Lucero v. Wheels India, Ltd.*, No. 23-10494, 2023 WL 8622293, at *1–2 (5th Cir. Dec. 13, 2023). Most recently, Plaintiffs attempted service via email. *See* ECF Nos. 113, 114, 115. Wheels India has still not appeared. Plaintiffs requested default which the Clerk of the Court entered on June 4, 2024. *See* ECF Nos. 117, 118. Plaintiffs then filed this Motion. ECF No. 119. All Defendants except Wheels India either settled, or Plaintiffs dismissed them. *See* ECF No. 15, 105. Plaintiffs now seek $5,000,000 in unliquidated damages, prejudgment and postjudgment interest, court costs, and exemplary damages against Wheels India. ECF No. 119. The Court referred the Motion to the Magistrate Judge to hold an evidentiary hearing and provide the FCR on the appropriate damages amount to award in default. ECF No. 121.

The Magistrate Judge held an evidentiary hearing and concluded Plaintiffs should receive $54,080.00 for lost wages; $36,194.89 for medical expenses; $250,000.00 for past and future pain, suffering, and mental anguish; $25,000.00 for disfigurement; $50,000.00 for loss of consortium and household services; and prejudgment and postjudgment interest based upon the evidence Plaintiffs presented.

### LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment—"a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). A defendant defaults when it fails to plead or otherwise respond to the complaint within the allotted time, entitling a plaintiff to apply for default judgment. *See* FED. R. CIV. P. 55(a). If a default occurs and the Clerk enters default, the movant

may "apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). Courts may grant or deny default judgment in their discretion. *Lewis*, 236 F.3d at 767.

Default judgment is available if a movant establishes: (1) the defendant was served with summons and complaint and default was entered for the defendant's failure to appear; (2) the defendant is neither a minor nor an incompetent person; (3) the defendant is not in military service; and (4) if the defendant appeared in the action, that the defendant had notice of the application for default judgment. FED. R. CIV. P. 55(b)(2); 50 U.S.C. § 3931. The movant must also make a prima facie showing of jurisdiction. *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001).

A three-pronged analysis guides courts determining whether default judgment is appropriate. *Rubin v. Carvi's Custom Painting, LLC*, No. 4:24-CV-005-P, 2024 WL 3363920, at *1 (N.D. Tex. July 10, 2024). First, the court must ask if default judgment is procedurally proper. *Id.* In the Fifth Circuit, this requires consideration of the six *Lindsey* factors: (1) "whether material issues of fact are at issue," (2) "whether there has been substantial prejudice," (3) "whether the grounds for default are clearly established," (4) "whether the default was caused by a good faith mistake or excusable neglect," (5) "the harshness of a default judgment," and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Second, if default judgment is procedurally proper, courts analyze the substantive merits of the plaintiff's claims. *Rubin*, 2024 WL 3363920, at *1. This requires a "sufficient basis in the pleadings for the judgment." *Id.*; *see also* FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). A defendant admits the plaintiff's allegations of fact, and the court deems the facts admitted for default judgment purposes, if the defendant fails to answer a complaint. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The defendant may not contest these facts on appeal. *Id.*

Third, courts determine the appropriate form of relief, if any. *Rubin*, 2024 WL 3363920, at *1. The court does not necessarily credit as true the plaintiff's well-pled factual allegations regarding damages when it makes this determination. *Id.* If damages are readily calculable, a court may enter default judgment without conducting a hearing, upon timely motion from the plaintiff. *Id.*; FED. R. CIV. P. 55(b).

ANALYSIS

I. The Court has jurisdiction.

The Court has diversity jurisdiction under 28 U.S.C. Section 1332(a)(2). The action is a civil action between citizens of Potter County, Texas and an Indian corporation with its principal place of business in Tamil Nadu, India. ECF No. 1 at 2. Thus, complete diversity exists. And the matter in controversy exceeds $75,000. *See* ECF No. 1-3 at 7–8. Plaintiffs have made a prima facie showing of jurisdiction. *See Kurnatovskiy*, 242 F.3d at 325.

II. Default judgment is available.

Plaintiffs provably served Wheels India with summons and complaint. *See* ECF Nos. 113, 114, 115, 126, 127. The Clerk has entered default for Wheels India's failure to appear. ECF No. 118. Wheels India, as a company, is not a minor nor an incompetent person, and no evidence in the record contradicts. ECF No. 119 at 3. Because it is a company, it is also not in military service. *Id.* Wheels India need not have notice of the application for default judgment because it has not appeared. Thus, Federal Rule of Civil Procedure 55(b)(2) is satisfied.

III. Default judgment is procedurally proper.

To evaluate whether default judgment is procedurally proper, the Court considers the six factors from *Lindsey v. Prive Corp.* 161 F.3d 886, 893 (5th Cir. 1998). First, material issues of fact do

not exist. Wheels India's default requires the Court to assume the truth of Plaintiffs' allegations. *See Rubin*, 2024 WL 3363920, at *2.

Second, there is substantial prejudice to Plaintiffs if default judgment is not awarded. Plaintiffs engaged in this litigation for almost five years. *See* ECF No. 1. They settled their claims with another Defendant. ECF No. 105. And they exhausted every resource to serve Wheels India lawfully: They navigated the Indian bureaucracy's morass, contended with Wheels India's service refusal, appealed to the Fifth Circuit, and finally obtained satisfactory service on Wheels India via email. In all, Plaintiffs were stymied from vindicating their claims against Wheels India for *years*. Needless delay is substantially prejudicial. *See Sun Bank of Ocala*, 874 F.2d at 276–77. "Every passing day adds insult to [Mr. Lucero's] injury." *Rubin*, 2024 WL 3363920, at *2. Default judgment would not prejudice Wheels India because it never once attempted to defend against Plaintiffs' allegations.

Third, the grounds for default are clearly established. The Court even confirmed Wheels India received service at the proper email address to eliminate any whiff of uncertainty. *See* ECF Nos. 126, 127. It has not appeared since service was effected over a year ago, in January 2024. Default judgments are disfavored and are "available only when the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). Here, the adversary process ground to a standstill since the only other Defendant settled in early 2023. This factor also supports default judgment against Wheels India.

Fourth and fifth, the record contains no evidence of a "good faith mistake" or "excusable neglect" on Wheels India's part. It was served process and did not respond. The Court cannot discern whether Wheels India's failure to appear was due to good faith mistake or excusable neglect because it did not explain. Nor would default judgment be too harsh because Wheels India failed to appear, and

the Court cannot evaluate whether it would be harsh or not *because* it failed to appear. Thus, the fourth and fifth factors support default judgment.

Finally, this Court would not "think itself obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Thus, all the *Lindsey* factors support default judgment procedurally here. *See Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (explaining that district courts are not required to set aside a default where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense"). Here, at least, Plaintiffs would be prejudiced if default were set aside.

### IV. Default judgment is substantively proper.

Now that default judgment is procedurally proper, it must also be substantively proper. The Court reviews the pleadings to evaluate whether Plaintiffs plead a sufficient basis for their claims to relief. *See Nishimatsu*, 515 F.2d at 1206. Federal Rule of Civil Procedure 8 guides this analysis. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). It requires "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). The pleading need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (omission in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[D]etailed factual allegations" need not exist. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This threshold is even lower than Federal Rule of Civil Procedure 12(b)(6) normally requires. *Id.*

The Court applies Texas law because it sits in diversity. Plaintiffs bring two claims: First, they bring a strict products liability claim. ECF No. 61 at 4. In Texas, a plaintiff must allege:

"(1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user." *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 741 (N.D. Tex. 2016) (quoting *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984)); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334–35 (Tex. 1998) (explaining Texas follows the Restatement (Second) of Torts in product liability cases); RESTATEMENT (SECOND) OF TORTS § 402A (AM. L. INST. 1965).

Plaintiffs allege sufficient facts, which the Court must credit as true, to succeed on this claim. *See Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). Plaintiffs alleged the split ring assembly was defective. ECF No. 61 at 4. They alleged the defect rendered the product unreasonably dangerous. *Id.* ([The split ring assembly] had a proclivity to blow apart and explode when put to the use intended and anticipated . . . ."). They alleged the split ring assembly was "in substantially the same condition as when it was designed, manufactured, sold and distributed by Defendants and was used by Mr. Lucero in the manner in which the product was reasonably intended to be used." *Id.* at 5. Finally, they alleged the split ring assembly was the producing cause of the injury. *Id.* Thus, Plaintiffs pled sufficient facts to prevail on their strict products liability claim.

Second, Plaintiffs bring a negligence claim. In Texas, a plaintiff must allege "a legal duty owed to the plaintiff by the defendant, breach of that duty, and damages to the plaintiff proximately caused by the breach of that duty." *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 385 (Tex. App. 2009). Here, Plaintiffs' allegations are disorganized but all present. They allege Defendants had a duty to Mr. Lucero which they breached. ECF No. 61 at 7. And they

allege the breach of that duty was a proximate cause of Mr. Lucero's injuries. *Id.* at 3–4, 6. They testified to those injuries at the damages hearing. *Wooten*, 788 F.3d at 498 (incorporating allegations at a damages prove-up hearing as evidence to assess the entry of default judgment).

Plaintiffs also seem to allege gross negligence. ECF No. 61 at 2, 6. In Texas, gross negligence is an act or omission that (1) "when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others" and (2) "of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11) (2015). It has subjective and objective components. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Here, Plaintiffs "touch[] on both gross negligence components." *Morales v. Singh*, No. 23-CV-043, 2025 WL 88853, at *5 (W.D. Tex. Jan. 2, 2025). They allege Defendants' "acts or omissions . . . when viewed objectively from their independent standpoints involved an extreme degree of risk to Plaintiffs" and that Defendants "had independent actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of Plaintiffs." ECF No. 61 at 6.

Plaintiffs are "admittedly light on factual details" but, with all facts alleged in the Complaint along with the facts established at the damages hearing, Plaintiffs put forth "colorable claim[s] for relief and provided [Wheels India] with the requisite notice." *Wooten*, 788 F.3d at 497. They alleged facts that demonstrate Defendants' product exploded and struck him in the head, causing lifelong injury. *See Wooten*, 788 F.3d at 499 (explaining a negligence claim need not even mention every element to satisfy Rule 8).

### V. Plaintiffs' objections are overruled except as to disfigurement damages.

This Court referred Plaintiffs' Motion to the Magistrate Judge for an evidentiary hearing because damages were not liquidated nor capable of mathematical calculation. ECF No. 121; *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (explaining "judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation"). Plaintiffs timely objected to several of the Magistrate Judge's findings, conclusions, and recommendations. ECF No. 132.

Federal Rule of Civil Procedure 72(b)(3) requires a district court "determine de novo any part of the magistrate judge's disposition that has been properly objected to." When adjudicating the objections, the district court "may accept, reject, or modify the recommended disposition; [or] receive further evidence." FED. R. CIV. P. 72(b)(3). While a district court may receive new evidence in objections, the objecting party "waives legal arguments not made in the first instance before the magistrate judge." *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998). District courts must "review *de novo* the actual evidence on objected-to findings" but they are "not [] compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge." *Id.* at 852. Thus, district courts can exercise their discretion to accept or reject new evidence in objections; one reason to do so is to guarantee parties do not "use the magistrate judge as a mere sounding-board for the sufficiency of the evidence." *Id.*

After a *de novo* review and evaluation of the evidence presented before this Court and the Magistrate Judge, the Court **OVERRULES** Plaintiffs' objections except their disfigurement damages objection.

### A. The Mills Report lacks a sufficient evidentiary basis to support its reliability.

Plaintiffs objected to the Magistrate Judge's evaluation of the Mills Report and conclusion it lacked a "sufficient evidentiary basis to support its reliability." ECF Nos. 125 at 8; 132 at 3; 123-12 (the Mills Report). Plaintiffs first dispute the Magistrate Judge's conclusion the Mills Report is unreliable because it relies on an injury date of October 10, 2018, instead of the true incident date of August 10, 2018. They argue the Mills Report uses October 10, 2018, because that is when Mr. Lucero's payments from his previous employer ceased. ECF No. 132 at 3. However, the Mills Report contradicts their claim. The Mills Report's cover page proclaims itself an expert report "in the personal injury matter of Mr. Eric Lucero due to *injuries sustained* on October 10, 2018." ECF No. 123-12 at 1 (emphasis added). The report reiterates. *Id.* at 4 (noting the "injury date" is October 10, 2018, and calculating Mr. Lucero's age at injury to be 38.81 which assumes an approximate injury date of October 10, 2018).

Second, they object to the Magistrate Judge's rejection of the Mills Report because it relied on the assumption Mr. Lucero was self-employed in the moving and storage business. ECF No 125 at 7. The Magistrate Judge noted that Plaintiffs presented "nothing" at the damages hearing to support Mr. Lucero was employed in the moving and storage business nor did they provide "pay stubs, tax returns, bank records, or other similar evidence." *Id.* Plaintiffs claim the Mills Report is nonetheless reliable on this point because Mr. Mills "relied on extensive interviews and conversations he had with Mr. Lucero, as well as [] data, documents and information provided by Mr. Lucero's counsel." ECF No. 132 at 3–4. However, without any additional evidence nor hearing testimony, the Court need not disturb the Magistrate Judge's finding that the Mills Report was unreliable "as to the wage calculations." ECF No. 125 at 7.

Third, Plaintiffs object to the Magistrate Judge's finding that insufficient evidence and testimony support the Mills Report's "calculations [that] appear premised on the assumption that Lucero will not be able to work in the future." ECF No. 125 at 7. They argue Mr. Lucero has been deemed disabled and receives disability checks. ECF No. 132 at 4. However, the Court will not disturb the Magistrate Judge's finding because Plaintiffs presented "no testimony from a healthcare provider, disability or vocational specialist, or other similar person to show how Lucero's ability to work was impacted by his accident." ECF No. 125 at 7. Mr. Lucero is disabled, but Plaintiffs' evidence reveals he is only 5% disabled. ECF No. 123-2 at 6. Without additional evidence he is disabled such that he is fully unable to work in the future, the Court need not credit Mr. Mills's "individual conversations with Mr. Lucero regarding his circumstances around various factors of the evaluation." ECF No. 132 at 4. Mr. Mills did not offer "testimony to support the calculations, including the premises on which they are based." ECF No. 125 at 8. The Magistrate Judge was correct to not accept at face value his calculations and base an award for "future lost wages" off them. *Id.*

Fourth, Plaintiffs object that the Magistrate Judge found some medical expenses listed in the Mills Report duplicative of medical expenses Plaintiffs separately sought for recovery. Plaintiffs claimed damages of $1,065[,]589 for "Lost Wages, past and future." ECF No. 123 at 15, 16. They cite to the Mills Report for this figure. *Id.* at 16. But the Mills Report considered some of the same medical expenses that Plaintiffs sought recovery for elsewhere in their Motion. *See* ECF No. 123 at 11–12 (requesting damages for some of the same medical expenses contemplated in the Mills Report's figure). Of course, the Court cannot award duplicative damages. Plaintiffs claim the "Mills report takes medical expenses incurred into account to determine all of Mr. Lucero's losses, not to establish a right to reimbursement," attempting to

distinguish how they characterized the Mills Report in their Motion. ECF No. 132 at 4. If that were so, Plaintiffs should not have cited the number containing duplicative calculations as their "Lost Wages, past and future" figure in their Motion. ECF No. 123 at 16. In any case, Plaintiffs do not argue against the Magistrate Judge's finding that "there is inadequate underlying documentation to support the $401,324 in medical expenses outlined in the Mills report." ECF No. 125 at 8; ECF No. 132 at 4.

Finally, Plaintiffs object to the Magistrate Judge's finding that the Mills Report is unreliable because it lacks "any explanation of what services were lost or how they were valued" for its estimated loss of $178,867 for household services. ECF No. 132 at 4–5. Plaintiffs argue that one citation to the U.S. Department of Labor Bureau of Labor Statistics is sufficient to allay this lack of explanation. *Id.* However, the Magistrate Judge is again correct. The citation, at best, explains how the Mills Report valued the lost household services. It does not explain "what services were lost" nor does it explain "how the monetary amount listed in the Mills report was assigned" as the Magistrate Judge's concerns display. ECF No. 125 at 8–9. Ms. Potts's testimony that "Lucero was unable to do some household chores following the accident," paired with one citation to the Department of Labor website, does not explain how Mr. Mills produced a 40-year calculation of lost household services with estimations of uninjured and injured services and loss. *See* ECF No. 123-12 at 8–9.

For the foregoing reasons, Plaintiffs' objections to the Magistrate Judge's recommending this Court "determine that the Mills report lacks a sufficient evidentiary basis to support its reliability" are **OVERRULED**. ECF No. 125 at 8.

### B. The evidence does not support an award for medical expenses of $97,421.09.

First, Plaintiffs object that the Magistrate Judge did not admit their affidavits supporting their medical expenses under Texas Civil Practice and Remedies Code Section 18.001 as a residual hearsay exception. ECF No. 132 at 5–6. They "object to the Findings' reasoning because [Section] 18.001 affidavits are admissible under the residual exception of the hearsay rule." *Id.* at 5.

As the Magistrate Judge noted, Texas law permits a plaintiff to "present evidence concerning the reasonableness and necessity of past medical expenses through expert testimony at trial or an affidavit from the plaintiff's health-care provider made in compliance with [Section] 18.001 of the civil practice and remedies code." *Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 671 (Tex. App. 2018). Section 18.001 "(1) allows for the admissibility, by affidavit, of evidence of the reasonableness and necessity of charges which would otherwise be inadmissible hearsay" and (2) it "permits the use of otherwise inadmissible hearsay to support findings of fact by the trier of fact." *In re Allstate Indem. Co.*, 622 S.W.3d 870, 881–82 (Tex. 2021).

However, a division exists in federal courts: Is Section 18.001 procedural or substantive and thus applicable in federal court? *See Schmidt v. Blue Monster Transp., Inc.*, 606 F. Supp. 3d 424, 426–27 (N.D. Tex. 2022) ("District courts across Texas are deeply divided on the issue of whether Section 18.001 affidavits are admissible in federal court. . . . [T]here is an urgent need for the Fifth Circuit to step in and provide clarity."). Although Plaintiffs are entitled to *de novo* review in general, objections that "simply rehash or mirror the underlying claims addressed in the Report are not sufficient to entitle the party to *de novo* review." *Tilley v. Director, TDCJ-CID*, No. 6:18-CV-163, 2020 WL 5534537, at *1 (E.D. Tex. Sept. 14, 2020); *United States v. Morales-Castro*, 947 F. Supp. 2d 166, 171 (D.P.R. 2013) (explaining the party's objections must not be a "reiteration of arguments already considered and rejected by the magistrate judge").

Plaintiffs "agree with the conclusion of the Findings," just not the "reasoning." ECF No. 132 at 5. However, the Court need not resolve the challenging question of whether Section 18.001 applies here based on arguments that merely "reiterate" those presented to the Magistrate Judge. *See* ECF No. 132-1 at 22 (relying on *Duplessis v. Singh*); ECF No. 123 at 9–10. This Court, after a *de novo* review of the Magistrate Judge's legal reasoning, agrees "this Court need not wade into the muddy waters to decide this case." ECF No. 125 at 12–13.

Second, Plaintiffs object to the amount of medical expense damages the Magistrate Judge recommended. ECF No. 132 at 6. They specifically object to the Magistrate Judge's refusal to consider their Exhibit F. *Id.* Exhibit F is an email regarding expenses and is not an affidavit satisfying Section 18.001 or the residual exception to the rule against hearsay. ECF No. 123-6. Thus, the Magistrate Judge correctly did not rely on it. Plaintiffs otherwise accept how the Magistrate Judge calculated the medical expense damages. ECF No. 132 at 6 ("Plaintiffs object to this amount, and would argue that—using the calculation method provided in the Findings . . . ."). Plaintiffs' reliable affidavits establish a past-medical-expenses amount of $36,194.89. This figure excludes the $61,226.20 Plaintiffs argue should be included but for which they did not submit admissible evidence under the residual hearsay exception or Section 18.001.

Accordingly, Plaintiffs' Objections on past medical expenses are **OVERRULED**.

### C. The evidence supports the Magistrate Judge's damages recommendation for pain and suffering, mental anguish, and physical impairment.

Plaintiffs object that the Magistrate Judge recommended $250,000 in damages for pain and suffering, mental anguish, and physical impairment. ECF No. 132 at 6–7. Additionally, they claim they are entitled to a separate award for physical impairment. *Id.* at 7. They do not clarify how much additional damages they seek beyond the recommended amount.

The Magistrate Judge cited caselaw to confirm the recommended award aligned with other damage awards based on similar evidence. *See* ECF No. 125 at 18. Plaintiffs present no caselaw to demonstrate courts award higher awards than the Magistrate Judge recommended for pain and suffering and mental anguish sourced from similar injuries. Instead, they rehash the evidence they presented to the Magistrate Judge. The Court agrees with Plaintiffs that awards for pain and suffering and mental anguish are "inherently subjective." *Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 551 (Tex. App. 2006). And the Court agrees with the Magistrate Judge that $250,000 is "within the range of awards for similar degrees of physical pain and suffering, emotional anguish, and physical disability seen in other Texas cases." ECF No. 125 at 18.

Under Texas law, "if other elements such as pain, suffering, mental anguish, and disfigurement are submitted, there is little left for which to compensate under the category of physical impairment other than loss of enjoyment of life." *Golden Eagle Archer, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003). To establish entitlement to separate damages for physical impairment, "the plaintiff must prove that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable through other damage elements, and (2) these distinct injuries have had a substantial effect." *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 514 (Tex. App. 2016). On the first element, Texas law looks to "whether (1) impediments to the plaintiff's non-work related activities are obvious from the injury itself, or (2) the plaintiff produces some evidence of specific non-work related tasks or activities he can no longer perform." *Id.* at 515. "[T]he focus of this element of damages is not the injuries or symptoms themselves, but whether they result in a substantial effect on the plaintiff[']s life activities or functions." *Id.* Courts exercise caution in awarding physical impairment damages "because of a justified concern to prevent a double recovery." *Peter v. Ogden Ground Servs. Inc.*, 915 S.W.2d 648, 650 (Tex. App. 1996).

The Magistrate Judge explicitly considered Mr. Lucero's testimony when he calculated damages for pain, suffering, and mental anguish. ECF No. 125 at 18. Awarding additional physical impairment damages would risk double recovery. Additionally, Mr. Lucero did not testify about *specific* nonwork-related tasks or activities he can no longer perform. Even more, Plaintiffs originally considered the symptoms Mr. Lucero experienced from mental anguish and physical impairment to be the same. *See* ECF No. 123 at 12–15 (seeking $1,000,000 for "Physical Impairment *and* Mental anguish, past and present" (emphasis added)). "[W]hether to award damages and how much is uniquely within the factfinder's discretion." *Golden Eagle*, 116 S.W.3d at 772. Accordingly, Plaintiffs' Objection to the damages amount for pain and suffering and mental anguish is **OVERRULED**.

### D. The evidence supports an award of $50,000 for disfigurement.

Plaintiffs object to the Magistrate Judge's damages recommendation of $25,000 for disfigurement. ECF No. 132 at 8. They claim Mr. Lucero's "large, prominent scar across his forehead" entitles him to $100,000 in disfigurement damages, not $25,000.

Disfigurement "impairs the appearance of a person, or [is] that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 758–59 (Tex. App. 2018). The Magistrate Judge relied on *Holcombe v. United States*, which awarded $50,000 in disfigurement damages, to justify his recommendation for $25,000 in disfigurement damages. ECF No. 125 at 19; 584 F. Supp. 3d 225, 325 (W.D. Tex. 2022). Plaintiffs argue *Firestone Tire & Rubber Co. v. Battle* is more on point. 745 S.W.2d 909 (Tex. App. 1988). In *Firestone*, the victim suffered a severely disfigured and scarred hand from a tire explosion. The court there upheld a $110,000 past and future disfigurement award.

*Firestone Tire & Rubber Co.* is more applicable here than *Holcombe*. Mr. Lucero exhibits a "prominent scar, several inches long, that travels across his forehead." ECF No. 125 at 19. Even in the case the Magistrate Judge relied on, the victim received $50,000 in past and future disfigurement. Mr. Lucero suffered a similar accident as the victim in *Firestone Tire*. However, Mr. Lucero's disfigurement is not as severe as the victim's in *Firestone Tire*. The victim there had no functional use of his hand and had to wear a glove to hide the scars. Mr. Lucero suffers a prominent scar but does not have a misshapen head nor does he need to wear anything to cover the scar. Accordingly, Plaintiffs' Objection to the Magistrate Judge's recommendation on past and future disfigurement damages is **SUSTAINED in part**. The Court will award Plaintiffs $50,000 in past and future disfigurement damages.

### E. The evidence supports the Magistrate Judge's recommendation of $50,000 for loss of consortium and loss of household services.

Finally, Plaintiffs object to the Magistrate Judge's recommendation Ms. Potts receive $50,000 in damages for loss of consortium and loss of household services. ECF No. 132 at 9–10. The Magistrate Judge based his recommendation on Ms. Potts's testimony "about the accident's impact on her relationship with Lucero and the functioning of their household following the accident." ECF No. 125 at 21. She explained how Mr. Lucero was easily irritable, lived in the garage, and avoided family activities, dinners, and household work for about two years after the accident. The Magistrate Judge based his recommendation on several similar cases. *See, e.g.*, *Holcombe*, 584 F. Supp. 3d at 318 (wife received $200,000 in past loss of consortium and $200,000 for future loss of consortium because she felt "overwhelmed" and "burnt out" caring for her fully paralyzed husband and experienced a complete lack of physical intimacy); *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1436 (5th Cir. 1988) (upholding $72,000 to wife because injury caused him restlessness and led to sleeping separate); *Hernandez*, 794 S.W.2d at 77 (upholding jury

$17,000 jury award to wife for five-year loss of household services). These cases exhibit a wide range of awards and injuries. Plaintiffs testified that the injuries affected their relationship worst during the first two years. ECF No. 132-1 at 19, 28, 31. They also testified that though Mr. Lucero is still different than before, he is much improved. *Id.* at 25, 31. They did not testify about any loss of physical intimacy. Plaintiffs offer *West Star Transportation, Inc. v. Robison*, where a court upheld $400,000 in loss of consortium damages for a victim who suffered a traumatic brain injury that meant he needed in-home or institutionalized medical care for the rest of his life. 457 S.W.3d 178, 184, 190-91 (Tex. App. 2015).

The Court agrees with the Magistrate Judge's recommendation. Ms. Potts suffered from Mr. Lucero's injuries for two years. But the extent of the loss is not as extensive as in *West Star Transportation*. Nor is the loss of consortium and household services as great as in *Holcombe v. United States* because Mr. Lucero is not *completely* paralyzed, nor did Ms. Potts testify their physical intimacy is gone for life as in *Holcombe*. *See* ECF No. 132-1 at 20, 26–27 (indicating one of Ms. Potts's and Mr. Lucero's children was born in February 2020, eighteen months after the incident). And in *EDCO Production, Inc. v. Hernandez*, only $17,000 was awarded for a five-year, complete loss of household services. 794 S.W.2d 69, 77 (Tex. App. 1990). "[T]here is no monetary yardstick for determining the value of such loss." *United States v. Varner*, 400 F.2d 369, 373 (5th Cir. 1968). Even more, Plaintiffs admitted the difficulty of quantifying loss of consortium and loss of household services and professed acceptance of the Court's exercise of discretion on that amount. *See* ECF No. 132-1 at 36 ("And then loss of consortium and loss of household services is always hard to—hard to quantify. So whatever the Court wants to do is fine with us."). Accordingly, Plaintiffs' Objection is **OVERRULED**. The Court accepts the Magistrate Judge's recommendation.

CONCLUSION

After a *de novo* review, the Court **ADOPTS** the Magistrate Judge's recommended damages, reasoning, and factual findings except for the Magistrate Judge's disfigurement damages recommendation. Accordingly, all of Plaintiffs' Objections except their objection to the disfigurement amount are **OVERRULED**. The Objection to the disfigurement damage recommendation is **SUSTAINED in part**. The Court **AWARDS** the following damages per the Magistrate Judge's recommendations as modified by this Court:

- $54,080.00 in damages for lost wages.

- $36,194.89 in damages for past medical expenses.

- $250,000 in damages for past and future pain and suffering and mental anguish.

- $50,000 in damages for past and future disfigurement.

- $50,000 in damages for loss of consortium and household services.

- Prejudgment interest at a rate of 7.50%[1] on $440,274.89 accruing beginning August 10, 2020, and ending one day preceding the date the Court renders final judgment per TEX. FIN. CODE §§ 304.103, 304.104 (1999).

- Postjudgment interest at a rate of 4.12%[2] calculated from date of entry of final judgment per 28 U.S.C. § 1961(a).

**SO ORDERED**.

March 17, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[1] Texas Office of Consumer Credit Commissioner Interest Rates, https://occc.texas.gov/publications/interest-rates.
[2] Post Judgment Interest Rates, https://www.txnd.uscourts.gov/post-judgment-rates.